Good morning. We have four argued cases today, and for one of the cases, we have a different panel, and for the other cases, what we're going to do is to hear that one case first, which is number 2012-1343, SMITH & NEPHEW v. REA. I guess that's going to need some rearrangement here, and then we'll adjourn briefly and come back and hear the other case. So, let's go ahead and hear the other case, SMITH & NEPHEW v. REA. May it please the Court. Good morning, Your Honor. In this appeal from the Patent Office, we start off with one undisputed fact that one would be motivated to have holes with the construct, that is, the plate and the screws. The Board held that was obvious, and that has not been appealed. Therefore, using threaded and unthreaded holes is obvious. The Board held, however, that one would not be motivated to make all of the holes threaded, and the threading of all the holes in the head portion is the sole basis for patentability. Can I ask you a question that doesn't pertain directly to the legal issue here, but as a background matter may be helpful? I'm having a hard time understanding the practical importance of this, and let me just sort of cut to the chase here on this. I mean, is it the case that, in your view, you could avoid any problem, at least of future infringement, by just drilling a hole, unthreaded, in the head portion of your device, which otherwise has all threaded holes? Because that sounds like it just turns into cobalt. Correct. Now, why are we having this huge fight? I mean, is it that you have back items that are subject to a claim of infringement? Because the parties are in ongoing litigation. That explains it. Exactly. It does emphasize the triviality of what we're talking about here as far as the invention itself, but it does, in our view, the claims were written specifically for the purposes of ongoing litigation. I think there are some issues of claim construction here which could usefully be addressed at the outset. The board opinion reads as though it's reading a compression requirement into the claims, which don't appear there on the face of the claims. Is that an accurate statement of a problem here? That is one of many. In fact, I believe, as in any patent case, we have to have an understanding of what the claimed invention is before we can proceed. We have major differences on what the claimed invention is. I believe they're reading in functionality requirements such as compression. I believe they're reading in many things into the claim that are just simply not there. And the easiest way to know that I can answer your question so easily, Judge Bryson, is claim 24 was invalid. It isn't valid. Claim 32 is the dependent claim which somehow imparts patentability. So the sole issue is really whether claim 32 renders the claim patentable. The sole thing that claim 32 adds is that the head holes are all partially threaded, only partially threaded. And the entire argument proceeds that somehow one of skill and the art wouldn't want to think about making all the holes partially threaded because one of ordinary skill and the art would think it would be inoperable. Well, that's exactly what the claimed invention is. Apparently, the appellees feel that they can claim what they think those of skill and the art would find inoperable. Well, that's obviously a circular argument. Well, their argument, I guess, is that compression at the hip portion is a necessary feature to make this work, right? That is definitely their position, yes. And what's your response to that? Well, one, it's not always necessary, but even assuming it's necessary, why can't one get compression with some threads in the hole? That's what it comes down to. They are procedures where you don't need to have compression and still use the plate. And another thing about the claimed invention, Judge Knight... Well, the list plate, that's the way the list plate works. Well, when you say this plate... The list plate, they prior... The secondary reference works without compression. That is correct. The secondary reference was to show that the idea of conical holes with threads is old. There's nothing special about conical. What I was trying to say is that back to the claimed invention, who says the claimed invention is limited to a conjular buttress plate? The claimed invention is to any plate for, it says, a long bone. What they're doing is they're reading in other characteristics as necessary, such as compression, such as a conjular buttress plate, as if the claimed invention is much more narrow than it really is. The claimed invention is broad and the only point of patentability is all the holes in the head portion are partially threaded. Their brief sometimes says fully threaded. Sometimes their brief says threaded as if it's fully threaded, but simply partially threaded. And what we did is say, no, one of skill in the art would not shy away from trying to gain compression having one or more threads, because that's exactly what the prior art did. And in fact, the patent itself explains that it was known to gain compression with some threads. And that's the 686. Yeah. It says, it says the prior art 686 patent disclosed that partially threaded holes either, allow either non-locking or locking screws to be used. Correct. And then they criticize the 686 and the patent because they say, but those were only partially threaded. And they claim partially threaded. This is a classic example of writing the claims, regardless of the prior art. The patent itself explains, as Judge Wallach correctly noted, that it was well known to use compression screws in partially threaded holes. You would expect- You're taking that as an admission of that prior art. Oh, absolutely. It's definitely an admission. And the board and the examiner had a little bit of disagreement on the degree to which that admission could be treated as an admission. Well, I guess there's a problem here in one sense. If we were to say that the claims do include a compression requirement in the head portion, then if I understand correctly, the 686 would not be new prior art and couldn't and wasn't used as a ground for rejection. Am I correct about that? You're raising another key point of the appeal. The board felt that we were using the 686 and the board says our first error. This is an error by the board, by the way. Firstly, the examiner- But stick with my question, which is, let's assume hypothetically, and I know you dispute this, that there is a compression requirement in the claims and that your answer to that is the 686 and these other two pieces of prior art. If I understand correctly, the 686 and these other pieces of prior art not being new prior art, or at least the 686 is not new prior art, can't be used as a ground of rejection. Am I correct about that? Yes, as long as you appreciate that when you say a ground for rejection, you mean as far as modifying the device to come up with the claimed invention. That is correct. However, we did not use, and this is the misunderstanding with the board, and you can read it in the hearing, we were using 686 and the DRP and the LRP to respond to the argument of inoperability. We weren't using those references to modify the device. We were saying that one would not shy away from threats simply because of a fear of losing compression, which is the patent office's ultimate holding, and that is not true. That is contrary to the patent. That is contrary to the 686. So there's a difference, and we cited the case law from this court, which they were unable to really respond to. It is okay to go beyond the references if you are responding or showing simply the motivation to combine the primary and secondary references, and that's what we did. Their argument being that there wasn't a motivation to combine because the combination without standard screws in the head portion wouldn't achieve compression. That's their argument, but in order to do that, in order to say that, they make many procedural arguments for you to disregard, and they actually ask you to disregard the 686, the LRP, the DRP. They need to have you disregard the references or to pretend we're relying on those references to modify the combination. No, we're relying on those references to rebut the argument of inoperability. They say it would not gain compression, but they somehow claim it and their device has it, which is another whole problem. So what do they do? They have to say, our invention is a specialized screw, which allows us to gain compression. Well, the screw isn't in the claim. That's another one of the claim construction problems that they're having. They're redefining the invention to act as if the invention includes a specialized screw. Well, it's not even a disclosure of a specialized screw. So that's another claim construction. So in order to respond to the 686, the very sentence that you read, Judge Wallace, they have to redefine the invention to dig deep to somehow distinguish their invention from the references. But to do so, they completely distort the claim invention and the reason for patentability, which is most succinctly shown in Dependent Claim 32. Now, the biggest problem for you, as you acknowledge, is the defender review. The board is substantial evidence review of its finding here, setting aside your legal arguments, and I understand you make separate arguments that there was a legal error. But when you get right down to the question of whether a person of ordinary skill would have understood that you could use a standard screw in a threaded hole, that's a factual question, it seems to me, and to which we owe them substantial evidence deference. Now, the principal authority on which Synthesis relies is the Turin Declaration, and in particular, I guess it's 84, 43, and 44, where Turin is talking about this question. He says, well, if you put a standard screw, besides the fact that a standard screw will pop up a little too high, but if you put that in a distortion of the threads and breakage, which will create pieces of metal, presumably, that will be injurious to the patient. Your response to that? Well, there's a few responses to that. One, Turin doesn't really come head to head with Dr. Marsh. He pretends that you're using the precise hole of Haas. In other words, that it's not only conical, but it is also threaded all the way up to the top. Yes, I assume... So you're saying if it's partially threaded, then Turin goes away because his concern about the screw head slapping into the threads and distorting the threads and ripping them off goes away. That's one of my responses. That's correct. That's one response. But did it ever occur how Synthesis and the Claims Invention overcame that problem? There's nothing in the patent overcoming that problem. They claimed partial or full. So their claimed invention claims the very device that Turin says is inoperable or has problems. That's another. So he's contrary to the patent and contrary to the claim. He's also completely unaware of the KSR standard. He assumes no creativity, no imagination, no help from one of skill in the art and completely ignores that all the references... Do you notice all the references are within a 12-month period and then a year later is the filing? It's a natural progression to simply go from Koval, which was in 1997. The other references are 97, 97, 98. They file in 99. It's a natural progression to see if you can make all the holes the same, to give the doctor the option of deciding which screw he puts in which hole. I'd like to reserve with the little time I have left from everybody. Thank you. Thank you, Mr. Ryan. Mr. Bailey? Good morning. May it please the court. I'm here today with the co-counsel, Ms. Sower, representing the Patent Office. It's your view that the claims here include a compression requirement? The claims cover some bone plates that can use compression and the claims might also encompass certain other environments that do not. Please answer the question. They do not. Okay. So what's the relevance of compression? Just to refute the notion that there's a motivation to combine here because it would be inoperable? Yes, Your Honor. And let me focus this court because I think the whole argument that you just heard is not focused to what this appeal relates to. This appeal is from an inter-parties re-exam and under this court's ruling in Belkin, the question presented is the substantial new question that was raised under 35 U.S.C. section 311. That's the requester's request and as adopted by the Patent Office under section 312. If you go back and look at the requester's request in this case, it is limited to the hostel being used with the conductor by this place. Your contention is they can't use the 686 and these two other pieces of prior art because they weren't part of the request? They cannot use it as a secondary reference. They can use it to point as a motivation of why one might want to use it. In your own view, that's what they're using it for because you agree that compression isn't a claim requirement and you're relying on compression to refute motivation and they're using the 686 to respond to that. Exactly. And the board looked at that. There's nothing wrong with it. In fact, the board looked at it and analyzed it and said, okay, if we take the 686 and combine it with Haas and combine that with the conductor buttress plate for the primary references, would one of ordinary skill in the art have wanted to use a standard screw with the conical fully threaded hole of Haas? And the board looked at Turin's declaration, paragraphs 43 and 44, and said no. Factually, no. One of ordinary skill in the art would not do that. Why? Because the screw head sits too high above the plate causing patient discomfort because these plates sit down upon the latter part of the knee and that rubs up against the iliotibial band. Dr. Turin said you would not do that. Why should the screw head need to sit above the level of the plate if there's a countersunk portion of the hole? I mean, that's very common. It occurs every day in carpentry. There's two arguments there, Your Honor. One, it's not the substantial new question of patentability that was before the Patent Office. The Patent Office raised this question on the Haas reference only. Let me ask you that. I want to hear the rest of your answers. The second part is that they don't tell us how they're going to redesign this hole. This plate is not being used for the mandible or the wrist, which is the locking reconstruction plate and the disarray plate. There you can use a hole that has some threading on the bottom and countersunk at the top. This is for condylar buttress plates used at the distal femur. The distal femur is the largest bone in the body. It carries the most weight. There's nothing in the record that says you can use a screw hole that has partial threaded and a countersunk top. But that's your claim. You're claiming partially threaded screw holes. I'm not sure how you can say that partially threaded screw holes are inoperative. We aren't saying they're inoperative. We're saying the partially threaded screw hole can also cover the patent drafter. The patentee in Figure 4 shows his preferred screw hole. It's fully conical, fully threaded. But the patent drafter, when he drafted it, said it can be partially threaded. Now, why would a patent attorney do that? A patent attorney does that because he wants to make sure no one gets around him on doctrinal equivalence by designing around, by limiting, taking, say, one threading out of the top or having a fully threaded hole. I don't understand what you're saying. Could you try again? I just don't understand it. There's no compression requirement here. So the idea is that Haas shows the use of at least partially threaded holes in the head portion. But you're saying, no, that wouldn't provide, there wouldn't be a motivation to combine Haas with the other references because it doesn't achieve compression because it only allows locking screws, right? I agree with you, except you made it sound as if Haas could be partially threaded. Haas is fully threaded. Well, so what's the point here? That because your whole argument rests on the difference between fully threaded and partially threaded? Absolutely. It's a key issue for the distal radius plates. There is nothing in the record to suggest that with respect to the distal radius, I mean, the congenital buttress plates used for the distal femur, that you could use a hole that is not fully threaded with a screw that is also a standard screw. And with a partially threaded… Wait a minute, counsel. Stop. When judges are talking to you, you stop. Sorry. Judge Bryson, you want to go first? Well, I just, I mean, I understand your procedural argument, but it sounds to me like you're just talking right into the face of the, not only the disclosure of 686, but also your own patent's description of 686 as being partially threaded holes. I mean, I guess if technically you survive this, I can't imagine what you're going to say in the infringement proceedings when somebody raises the 686, which obviously will be done. Sure. What's your answer? If you look at the background of the patent, column 2, where it introduces the 686 patent, it says it's known in the prior art to use a hole that has partial threading and also is partially unthreaded to use it for either non-locking or non-locking. But it says the partially threaded holes allow either non… Because the holes are only partially threaded, the locking screws may not maintain the fixed angular relationship under physiological loads. So those plates that use those types of holes were not under physiological loads. The condylar buttress plates that they're using for their physiological loads. But your claim covers the entire range of partially threaded holes, right? This whole argument, Your Honor, goes back to what did the prior art suggest prior to the date that we filed our patent application? Their substantial new question of patentability is combining the that is an improper combination. Let me ask you another question. Well, go ahead. Go ahead. You were in the middle of your point. I'll ask you. Okay. Our argument is that if you go back and look at the request for re-examination, this entire case is based on one combination. It's the primary references with the Haas hole, which is fully conical and fully threaded. The board analyzed that issue. That's what the board analyzed. And the board said you would not make that combination because you need compression in the head of that plate for it to work. Okay. Let me see if I understand what it is exactly, how it is that you solved the problem that the 686 did not solve. Now, in your brief, you make an allusion to a specialized screw, right? Is that your solution to the problem that the 686 did not solve? Correct. Well, but you don't have a claim to a specialized screw. If a specialized screw is the key to this invention, then it seems to me at minimum you have a best mode problem, right? Where is the screw? It's nowhere in the patent that I can see. Certainly not in the claims, right? Where is this specialized screw described? The specialized screw is described in figure one. And where is it described in the claims? Where does the claim require a specialized screw? The claim does not. I mean, you're not saying that figure one is, there's something that is completely new about this screw, right? What we are saying, Your Honor, is that prior to the date of Synthase's invention here, no one had put together a condylar buttress plate that had all the head holes threaded. No one had done it because there was no way prior to the date of our invention to get compression and use that condylar buttress plate properly. Therefore, their combination, if you look at the prior art and you try to get to where we were when we fought our patent application, you can't get there. And therefore, their combination... Where's your answer on the specialized screw, though? It is our position that once we were the first ones to develop a way to use a plate that had all the heads and all the holes in the head fully threaded, we were allowed to claim that plate with or without the screws. So now you're saying that the screw doesn't matter? The screw makes it possible for that plate to have functionality and be useful to those of ordinary skill in the art. So again, it's a motivation question. You're saying there's no motivation without the specialized screw, without compression, but then it seems to me that you can use the 686 in this prior art to take the other side of the motivation issue and to say, yes, there's a motivation and it's provided by these other references. I have two answers to that, Your Honor. One is procedural. The 686 is not a secondary reference. That doesn't make any difference if we're talking about motivation than rather than what's in the claim itself. Okay. Then I'd ask, Your Honor, what is the motivation to do what? No, this is your argument, not mine. But the motivation would be to use what they've said. The motivation is use a standard screw with the hole disclosed in Haas. And we have shown that that wouldn't be a solution. But there wouldn't be a motivation to use a partially threaded hole, right? So the issue of whether you would use a partially threaded hole is not part of this re-exam. It's not the substantial new question upon which this re-exam is based. Does your specialized screw in Figure 1 work with a partially threaded hole or a fully threaded hole? Could you repeat the question? The specialized screw that you identified, which is the screw that appears in Figure 1, is that designed to work with a fully threaded hole or a partially threaded hole? It could work. It's designed to work with a fully threaded hole. It could work with a partially threaded hole if you define a partially threaded hole as having threads, say, 95% up the depth of the hole, or if you had threads 95% around. If it is designed to work with a fully threaded hole, how did you solve... What is it about this screw that solves the problem that Dr. Turin pointed out with using a standard screw head with a fully threaded hole? The standard screw used with a fully threaded hole of Haas, which is a secondary reference, would sit to... The screw head sits to... I'm talking about his later... He says that at one point. Later, he says the problem is if you have a standard screw that isn't threaded and you press it in, you compress it into the threads, you're going to distort the threads and you're going to have chipping. That's basically his point. How did you solve the distortion and chipping problems with this specialized screw? What is it about this screw that solves that problem with a fully threaded hole? The screw head is conically shaped to match the conical shape of the hole. But wouldn't that mean that it is engaging the threads without itself having threads? It comes down and sits in against the hole, but because the conical shape is the same as the screw hole and the threads in there, it does not disrupt those screws. It does not push them aside and misthread them as you would with a standard screw. Well, if you have a conical head and you're going into a conical hole that is threaded and you tighten it down nice and tight to really give it a lot of torque, unless you've got the hardest metal on earth, you're going to be distorting the metal on those threads, particularly if the threads are very fine. I mean, that strikes me as kind of common sense. No, Your Honor, I disagree. These plates are used in the industry and the metals are designed such that when they are conically threaded in that regard and the conical threading in the hole, they don't have that issue. But the primary problem that Dr. Tern noted in that regard was that the standard screw sits too high above the plate, and that is what the board agreed. And that was the factual finding of the board. Okay, thank you, Mr. Bailey. This is Sauer. Am I pronouncing that correctly? Sauer, Your Honor. May it please the Court. From the Patent Office's perspective— Did you disagree with anything that he said, such as, for example, that there's no compression requirement in the claims? Well, the board didn't make any type of finding about whether or not there's a compression requirement in the claims. No, no, just could you answer my question? Do you disagree with anything he said about claim scope? I think from the Patent Office's view, we would say that compression is a part of, is the function of synthases and vintages. Is it a claim requirement? Well, our understanding from a case like In re Antony is that part of the obviousness analysis— Is it a claim requirement? We would think it is. It is. So you disagree with Mr. Bailey? Yes. How do you deal then with the 744 specification of 686 saying partially threaded holes allow either non-locking or locking screws to be used? Isn't that an admission? Well, their whole argument in the Patent Office's view relies on incorrect claim construction. It ignores the fact that what's happening here is you're taking the fully threaded, conically tapered from top to bottom holes of Haas and putting them onto a prior art consular buttress plate. And the holes in the prior art that the 744 patent is referring to, they're not conically shaped and fully threaded. All those are cylindrical holes with a countersunk top. So it doesn't even show that you would use a standard compression screw in a Haas's hole. And the board found that as a matter of fact. As I was saying, the Patent Office, our view on this case is that it all comes down to the board's decision that a skilled artisan would not have taken all the holes of Haas and put them onto a prior art consular buttress plate. A prior art consular buttress plate did require compression. So whether or not... How do you get the compression into the claims? I don't understand that. The claims don't say anything about using compression screws in the head portion. It doesn't say anything about compression. Where do you get that claim interpretation? From our point of view, we're dealing with the inter-parties re-examination. And I think Mr. Ray said that... Where do you get that interpretation of the claims? What's the justification for it? Well, respectfully, Your Honor, I think that when we're looking at compression in the claim, it's sort of leading us down the wrong path. No, no, but stick with my question. You may want to argue this differently. What's the basis for finding a compression requirement in the claims? Our argument is that when you look at NRA Antony, it says, for an apparatus claim, part of the obviousness analysis is to say... That may be part of the analysis. Why is it part of the claim? Because you can look in the written description for an apparatus claim and determine what its function is. And that is part of the... You read the function into the claim? I wouldn't go so far as to say that, but the function is important. But you did. You did earlier. You said that compression was a claim requirement. How is it a claim requirement? Your Honor, the way this whole inter-parties re-examination came about was, under the statute, there has to be a substantial new question. And that's the same... You're not addressing my question. It can't be a claim requirement, can't, because it's not in the claim. It may be relevant to the obviousness analysis. It may be relevant to motivation, but it is not a claim requirement. Okay. I would concede that at this point, then. Now, the board said that removing the non-threaded holes altogether would not allow the modified buttress plates to be used in the manner for the purpose intended in the two prior art references, Cobalt and the K982222 references. Um, without the use of the specialized screw, how can that be true? Because that's exactly what the patentee claims to have achieved. Right. I mean, I take it... Because your brief did not rely on the specialized screw, unlike... No, our... You do not think the specialized screw is part of this invention? No, it's not. Okay, fine. You part company with your co-counsel on that, right? I'm not sure. I honestly am not sure whether he thinks the screw is part of the claim. But the claim itself is... Okay, go ahead. The claim itself is to the bone plate, and that's what the Interparty 3 examination was directed to. Then how can this statement by the board be right in that, if it's true that removing non-threaded holes would not allow the plate to be used for compression, which is the manner that is described, how can it be that they managed to do that without reliance on some kind of other inventive feature like a specialized screw? Well, they found a way to do it using a specialized screw, and they got a patent on something that didn't exist in the prior art, which is the bone plate with the holes, basically the holes of Haas, which are conically tapered and threaded in the head of a prior art conjurer buttress plate. So the question, the whole question of this Interparty 3 examination was, at the time of their invention, when somebody skilled in the art had been motivated to do that. And the board found that, no, they wouldn't have been motivated based on the testimony of Dr. Turin. And from the patent office's perspective, that's the substantial evidence. They can bring in all the common sense, all the other evidence they have, but they actually have no evidence that what Dr. Turin said was that the board was unreasonable for relying on that. I think what they're trying to do is get the court to reweigh all the evidence and what happened below. That job is the board's job. The board is the fact finder. Those are the ones that look at all the evidence, and they make a call. Now, looking at all this afresh, the patent office agrees that this is probably a case that's very close to the line, and reasonable minds might disagree. But what the board did here, from our perspective, was not unreasonable. What's the fact finding that you're relying on? So the board made four critical fact findings. They found that the function of these pyrocondylar buttress plates was to create compression and to be used as a fracture reduction aid. They found, at the time of the invention, the way that the skilled artisans, the surgeons, created compression was that they used a standard compression screw, and they screwed them into an unthreaded hole. They also found that, at the time of the invention, there was no way to create compression in Haas's hole. And then they decided that, because of that, there would be no way, if you moved the holes of Haas over to a pyrocondylar buttress plate, there would be no way to create compression. The skilled artisan wouldn't do it. And that's a finding of fact. That's the motivation. There's no reason for the skilled artisan to do that. It really falls under the umbrella of teaching away. And what do you make of the 686 patent, in terms of what a skilled artisan would know about using non-threaded screws in threaded holes, or partially threaded holes? Your Honor, if I may first preface my answer with the fact that it's outside the scope of the inter-parties re-examination. Well, not for purposes of the motivation to combine a knowledge of a person of skill in the art, right? I mean, in terms of the background level of skill, it's not, right? Your Honor, we thought about this a lot at the patent office, and we have to respectfully disagree. You mean, you think we can't take account of the 686 for any purpose, is what you're saying? Yes, Your Honor, because it's outside the scope of the RAND. As this court said in Belkin, RAND sets the stage. RAND tells the board what they can consider, and RAND tells the, and that's the scope of the appeal. So let's suppose we reject that. There's a problem here, right? Because the 686 teaches using threaded holes. But not. Both the locking screws and the non-locking screws. Respectfully, Your Honor, not in a conical screw. And that's the difference. That's why they have to come... But why is a conical screw different? Because, as Dr. Turin testified, and Dr. Marsh did not rebut, and the board found, as a matter of fact, if you tried to use a regular compression screw in the holes of Haas, which were conically shaped, it would fit too far on top. You would have, so these bones go in your body, and they fit underneath the iliotibial band, and if you had it too high up, it would cause a problem. And I think... But if you just chopped off the head and made it a flathead screw, which there are many of in this world, then you're done with that problem. I think the problem is that... Isn't that true? As a matter of simple elementary mechanics? Respectfully, Your Honor, this is a specialized medical device, and we might think it's common sense to change the geometry of these holes. There was plenty of prior art that had screws that were countersunk and didn't sit up, right? Yes, but those were a different geometry used for different purposes. This bone plate is used for a long bone, which actually supports the weight of your body. The other prior art, the one that they're trying to get through the back door by saying they're relying on them as common sense, those were for... That's just jaw boning. Pardon me? I said that's just jaw boning. Okay. The prior art bones that they're relying on, these were for a mandible or a wrist. They didn't bear the weight of the body. So you could have a different geometry. Dr. Trenum testified, and he's a surgeon, he testified that the geometry of these holes were very important. You wouldn't willy-nilly go around trying to change the geometry when you have something that's going in the body. It can cause a lot of problems. When these bone plates... Okay, I think we're about out of time. Thank you, Mrs. Barrett. Mr. Ray, you have a little over two minutes here. Thank you, Your Honor. The government's view of the invention is on page five, and their view of the invention is the invention allows both types of screws. That's exactly what the board said was invalid, and that's what Colville shows. So the government was unable to articulate in its brief anything consistent with the patent as to what the claim to invention was. The Synthes has gone with the specialized screw, and I want to address that. The specialized screw issue isn't even in the disclosure. So it's not only not in the claim, which we all seem to be in agreement, I want to make it very clear. You say it's figure one. Well, but then look what they said about figure one. They said that that was just, they said, any surgical screw that has a non-threaded head 12 of an appropriate size and geometry for selected plate of the holes can be used. That's it. So they're using figure one as well known. You can use any of the appropriate size and geometry. And if this case is down to the appropriate size and geometry, I think we are smack dab, common sense, KSR, and I think we're done. So with that, I have nothing further. I have a question for you, Dewitt. We seem to be at a sharp disagreement over what uses can be made of the 686. And for me, at least, that's an important issue. Can you address that? And if you have any authority that you would like to point us to that would be contrary to the authority cited by your opposing counsel, that would be helpful. Well, one, they didn't cite any authority contradicting my authority. I cited the Sibbia case. Yeah, go ahead. Yeah, I cited two cases, the National Railway case and the Sibbia case. And both of those cases say that you are allowed to go beyond the combination to show a motivation to combine. We are doing something even more innocuous, and that is we're responding to an argument that they made that it somehow would become inoperable. And so we're saying, no, it's not inoperable. And we came back with the patent itself that there can be any doubt about using another reference. Not only are we using LRP or DRP, but that's the subject of the 686. And so I think you're allowed to use the patent itself regardless of the case law to show that the board's decision is contrary to the own admissions, the patent itself, 686 admission, which you have to reconcile if you're gonna have an opinion of any rational basis. It's not rational. So the cases I cited, they had a footnote. They had no response. The answer was I cited two cases. The PTO, I think, had a footnote that said, oh, but this is a re-exam, this is different. That's it. That's the extent of the legal argument there. Okay, thank you, Mr. Wright. Thank you, Your Honor. The case is submitted. We thank all.